IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 8:04CR435 |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| DALE GAVER, ) | |
| ) | |
| Defendant. ) | |

This case is before the court on defendant's MOTION TO SUPPRESS (#13). The motion was heard on March 9, 2005. The transcript of the proceeding (#25) was filed on March 28, 2005, at which time the motion was deemed submitted.

The defendant moves the court for an order suppressing all evidence obtained as a result of the execution of a search warrant on July 30, 2004[1] alleging the affidavit in support of the no-knock search warrant was so deficient that it rendered official belief in the warrant's existence entirely unreasonable; and that the affidavit was so facially defective, that no reasonable executing officer could presume it to be valid, all in violation of the defendant's Fourth Amendment rights under the United States Constitution. The government argues that even if the search warrant was improperly issued, the officers executing the warrant may rely on good faith exception of *United States v. Leon*, 468 U.S. 896 (1984).

---

[1]While the motion designates a search warrant executed on July 30, 2004, the evidence received at the March 9, 2005 hearing discloses all matters related to the motion occurred July 29, 2004.

**FACTUAL BACKGROUND**

James Vernon Quaites testified he is a sixteen-year employee of the Omaha Police Department currently serving in the narcotics unit. On July 29, 2004 as part of his duties as an Omaha police officer, he was involved in preparing an affidavit and search warrant which he later presented to a Nebraska state judge for issuance (8:22-9:14). Quaites noted that during his contact with the judge he provided no information other than the information contained in the affidavit, and that the judge asked no questions before he signed the search warrant (9:23-10:10).

On cross-examination Quaites testified that during his sixteen years with the Omaha police department he has executed hundreds of no-knock search warrants (13:6-11) and that the Omaha police department has provided him with training on how to apply for search warrants (13:12-15). Quaites also admitted he is generally familiar with Supreme Court decisions referencing no-knock search warrants (13:23-14:10).

The search warrant application states that on July 29, 2004 a reliable[2] informant ("C/I") told the officers that the defendant was actively involved in possessing, distributing, and using methamphetamine. Within two to three days before July 29, the C/I went inside defendants' residence at 980 South 50th Avenue and saw defendant using methamphetamine. The C/I also observed dealer quantities of methamphetamine contained in a safe in defendant's residence. Approximately two weeks earlier, on July 16, 2004, Omaha police officers received information from one Steven Jordan, who had been arrested for possession of a stolen vehicle and methamphetamine and wished to

---

[2]The search warrant application does contain information establishing the reliability of the C/I, and the reliability of the C/I has not been challenged.

cooperate with law enforcement.  Jordan said he bought the methamphetamine from a man named "Dale," who lived on 50th Avenue, just south of Leavenworth Avenue.  Jordan said he had been buying methamphetamine from Dale for quite some time.  According to Jordan, Dale was involved in distributing small amounts of methamphetamine, but Jordan had seen Dale in possession of larger amounts inside the residence.  Jordan said that Dale kept the methamphetamine and money inside a safe in his bedroom.  On July 29, 2004, Jordan met with Officer Lang at about 6:30 p.m. and directed Lang to Dale's residence at 980 South 50th Avenue.  Jordan also identified Dale, who was standing in the driveway of the residence.  Officers determined that defendant had outstanding felony and misdemeanor warrants for failure to appear, and that on March 30, 2003, defendant had been arrested for possession of methamphetamine and was currently out on bond on that charge.

As grounds to issue a no-knock warrant, the application and affidavit include the following information:  "The C/I ... stated that he/she observed several rifles and handguns inside of this residence."  (Affidavit & Application, p.2).  "[A] no-knock search warrant is requested because the C/I who provided the information to affiant officers stated that he/she observed several rifles and handguns in GAVER's residence within the past 72 hours of today's date." (Affidavit & Application, p. 4).

The search warrant includes the following:

> IT IS FURTHER AUTHORIZED, that Omaha, Nebraska Police Officers James V. QUAITES #1196 and Jeff HUNTER #1593 with the necessary and proper assistance, enter the premises described above without knocking or announcing their authority because I have found the sworn affidavit and application concerning this matter that the C/I who provided the information to affiant officers stated that he/she observed

several rifles and handguns in GAVER'S residence within the past 72 hours of today's date.

## LEGAL ANALYSIS

### A.     Existence of Probable Cause

The task of the issuing judge in determining whether probable cause exists to issue a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that evidence of a crime would be present.  See *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "An informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *United States v. Gabrio*, 295 F.3d 880, 882-83 (8th Cir.), *cert. denied*, 537 U.S. 962 (2002) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

The duty of this court, as a reviewing court, is simply to "ensure that the magistrate or issuing judge had a 'substantial basis for ...  conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  Great deference is afforded the issuing judge's determination of probable cause. *Illinois v. Gates*, 462 U.S. at 236.

Giving great deference to the issuing judge, I find that the search warrant affidavit (Ex. 1) demonstrated probable cause that evidence of a crime would be found at defendant's residence.

**B.     Issuance of No-Knock Warrant**

Nebraska law authorizes no-knock warrants pursuant to Neb. Rev. Stat. § 29-411, which provides, in relevant part:

> In executing ... a search warrant ..., the officer may break open any outer or inner door or window of a dwelling house or other building ... without giving notice of his authority and purpose, if the judge or magistrate issuing a search warrant has inserted a direction therein that the officer executing it shall not be required to give such notice[.]  The judge or magistrate may so direct only upon proof under oath, to his satisfaction that the property sought may be easily or quickly destroyed or disposed of, **or that danger to the life or limb of the officer or another may result**, if such notice be given[.]

(Emphasis added).

Because there is no federal law enforcement involved in this search, the federal "knock-and-announce" statute, 18 U.S.C. § 3109, does not apply in this case.  However, in *Wilson v. Arkansas*, 514 U.S. 927, 930 (1995), the Supreme Court held that the "common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry."  Accordingly, the Fourth Amendment requires an inquiry into the reasonableness of a no-knock search even if there is no federal involvement in the search or in procuring the search warrant, and a defendant need not show federal involvement to invoke protections against unreasonable no-knock searches.  *See United States v. Scroggins*, 361 F.3d 1075, 1080 (8th Cir. 2004).

> The Fourth Amendment does not forbid no-knock searches.  Rather, it requires that searching officers justify dispensing with the knock-and-announce requirement.  *See Richards v. Wisconsin*, 520 U.S. 385, 391 (1997).  Police officers can justify a no-knock entry if they show they had a reasonable suspicion that knocking and announcing their presence under the particular circumstances would threaten officer safety, be futile, or inhibit the investigation of the crime.  *Id.* at 394.  This showing is "not high," but is one that the police must still make when the defendant challenges the reasonableness of a no-knock search.  *Id.* at 394-95.

> Although drug investigations frequently pose unique threats to officer safety and the effective preservation of evidence, the Fourth Amendment forbids a blanket exception to the knock-and-announce requirement in drug cases. *Id.* at 394; *United States v. Moore,* 956 F.2d 843, 850 (8th Cir. 1992). The government must still meet its not-high burden of showing that it had a reasonable suspicion that knocking and announcing would be "'dangerous or futile, or ... would inhibit the effective investigation of the crime.'" *United States v. Banks*, 124 S. Ct. 521, 525 (2003) (alteration in original).
>
> The reasonable suspicion standard, of course, is lower than the probable cause standard. When determining whether reasonable suspicion exists, courts must evaluate the totality of the circumstances to determine whether the police officers had a particularized and objective basis for their conclusion. *United States v. Arvizu,* 534 U.S. 266, 273 (2002). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *Id.*

*United States v. Scroggins*, 361 F.3d at 1081 (parallel citations omitted).

In this case, a no-knock warrant was requested in conjunction with a drug investigation and based on information that the C/I saw several rifles and handguns in defendant's residence within three days of the search warrant application. Under these circumstances, I find that the affiant officers met the "not high" standard of showing they had a reasonable suspicion that knocking and announcing their presence would threaten officer safety, be futile, or inhibit the investigation of the crime. The authorization of a no-knock search in this instance did not violate defendant's Fourth Amendment rights.

### C. Good Faith Exception

I also find that the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), applies to this no-knock search warrant. *See United States v. Scroggins*, 361 F.3d at 1083. In *Leon*, the Supreme Court recognized that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." 468

U.S. at 916.  Accordingly, evidence obtained pursuant to a search warrant should not be excluded where the officers executed the warrant "with an objectively reasonable reliance on the magistrate's determination of probable cause."  *United States v. Riedesel*, 987 F.2d 1383, 1391 (8th Cir. 1993).

The Court established four exceptions to the good faith exception: (1) when the judicial officer was misled by information in the affidavit that the affiant knew was false or included in the affidavit in reckless disregard of the truth; (2) where the issuing officer wholly abandoned the judicial role; (3) where the affidavit supporting the warrant contains so few indicia of probable cause as to render official belief in existence of probable cause "entirely unreasonable;" and (4) where the warrant itself was so facially deficient that no executing officer could reasonably presume it to be valid.  *Leon*, 468 U.S. at 923.

Even if there was not probable cause to search or reasonable suspicion for the issuance of a no-knock warrant, the Fourth Amendment exclusionary rule does not bar the evidence obtained by the officer acting in reasonable reliance upon a search warrant issued by a neutral magistrate, even if it is later found to be invalid.  Given the facts of this case, the officers' reliance was objectively reasonable, as the issuing judge was not misled by false information known to be false by the applicants.  There is no evidence that the issuing judge abandoned his role, or that the warrant was based on an affidavit so lacking in probable cause as to make belief in it unreasonable.  Therefore, should the District Court find that the affidavit in this case did not establish probable cause to search or reasonable suspicion to authorize a no-knock execution, I find that the evidence is nevertheless admissible under the good faith exception of *Leon*.

## RECOMMENDATION

In summary, I find that there was probable cause to issue a search warrant in this case, and the issuance of a no-knock warrant did not violate the defendant's Fourth Amendment Rights. In the alternative, the good faith exception of *United States v. Leon*, 468 U.S. 897 (1984), should apply to this no-knock search warrant. For these reasons,

**IT IS RECOMMENDED** that defendant's MOTION TO SUPPRESS (#13) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" on or before . The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED April 26, 2005.**

                **BY THE COURT:**

                **s/ F.A. Gossett**
                **United States Magistrate Judge**